UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Thomas S. Van Blaricom, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No. 14 CV 50032 |
| | ) | Magistrate Judge Iain D. Johnston |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas Van Blaricom brings this action under 42 U.S.C. §405(g), challenging the denial of disability benefits. Before the Court are cross-motions for summary judgment.

## **BACKGROUND**

Plaintiff filed his application for Title II benefits on February 7, 2011, alleging an onset date in July 2008. Plaintiff does not include a fact section in his brief, nor does he argue that the administrative law judge ("ALJ") misconstrued any facts. So, this Court will not re-summarize the record here, as it is adequately set forth in the ALJ's opinion.

On September 19, 2012, the ALJ held a hearing. Plaintiff was 50 years old and testified that he had worked at a steel warehouse for approximately 11 years. He drove a forklift, put steel away, and loaded and unloaded trucks, lifting 100 pounds occasionally and 25 pounds frequently.  He was laid off in 2008 because "they didn't need [his] position anymore" and not because he missed work or did anything wrong.

Plaintiff testified that his hypertension (high blood pressure) wiped him out and gave him headaches. To get rid of the headaches, he often took naps.  His headaches are the primary reason he cannot now work. He stated that he had not had any headaches in the month before the

1

hearing because a new doctor gave him new medicines. Plaintiff's hypertension problems have been "pretty much the same" since 2008 when he stopped working. R. 37.

On October 19, 2012, the ALJ found plaintiff not disabled. The ALJ found that plaintiff had severe impairments of hypertension, history of myocardial infarction, and coronary artery disease and that plaintiff's right kidney dysfunction and his back and ankle pain were not severe. In his residual functional capacity ("RFC") finding, the ALJ found that plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; could sit for six hours in an eight-hour day; and could stand or walk for a total of two hours. The ALJ gave significant weight to a consulting doctor who examined plaintiff in July 2011 and concluded that, although plaintiff could not do his previous job as a warehouse worker, he "would be able to do a 'more sedentary job' and to operate light machinery such as a forklift." R. 19. Relying on the testimony of the vocational expert, the ALJ concluded that plaintiff could perform the jobs of production assembler and bench assembler.

## DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit

has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence).

Plaintiff raises two arguments. First, the ALJ misapplied the Medical-Vocational rules. Second, the ALJ erred in his credibility analysis. Neither argument is persuasive.

I.   **The Medical-Vocational Rules**

Plaintiff argues that he qualified as disabled under the Step 5 mandatory Medical-Vocational rules. The Government argues that the ALJ properly found that these rules are not mandatory because plaintiff's RFC falls between two ranges of work. In such cases, the ALJ should consult a vocational expert to determine if there are sufficient jobs in the national economy, which is exactly what the ALJ did here. The Court agrees with the Government.

Although both sides disagree on how these rules should be applied, they both agree that Social Security Rulings ("SSR") 83-10 and 83-12 provide the basic framework. SSR 83-10 outlines how the Medical-Vocational rules, also known as the Grid rules, are applied. These rules are set forth in Appendix 2 (*see* 20 C.F.R. Pt. 404, Subpt. P) and are based on five occupational categories: sedentary, light, medium, heavy, and very heavy. These categories are defined by seven strength categories: sitting, standing, walking, lifting, carrying, pushing, and pulling. For three of the occupational categories—sedentary, light, and medium—Appendix 2 includes a table (or grid) with columns for the three vocational factors (age, education, and previous work), along with a fourth column directing a particular outcome—either disabled or not disabled. The Grid contains many numbered rules, each applicable to a combination of vocational factors.

The nub of the current dispute is what to do when a claimant's abilities are between two occupational categories, which affects which table is used. The parties agree that plaintiff's RFC, as determined by the ALJ, falls between the sedentary and light categories. The ALJ found that

3

plaintiff could only stand or walk for two hours in an eight-hour day, which would place him in the sedentary category. However, the ALJ also found that plaintiff had the ability to occasionally lift 20 pounds and frequently lift 10 pounds, which would place him in the light category. The parties agree that if the table rule for light work is used, then plaintiff's vocational factors would lead to a finding that he was *not* disabled and, if the table for sedentary work was used, he would be found disabled.

Plaintiff argues that in this situation, where (as he philosophically puts it) "real life limitations do not always fit neatly into preordained boxes," the ALJ should essentially pick the category "closer to" or "more consistent with" his limitations. Dkt. #11 at 6, 9. According to plaintiff, because his limitations are far closer to the sedentary category, the ALJ should have used the Grid table for this category. Although plaintiff's brief is fuzzy on what authority supports this "closer to" methodology, he appears to be relying on a statement in the Glossary to SSR 83-10, stating that "a good deal of standing or walking" is "the primary difference between sedentary and most light jobs." *Id.* at 5. Plaintiff seems to be arguing—again, it is not clearly spelled out—that the word "primary" suggests that the ability to stand or walk for six hours is the dispositive factor and that this one ability trumps the others—in particular, lifting and carrying—in determining which work category, and thus which table, is applied.

In its brief, the Government argues that plaintiff has misconstrued the regulations. According to the Government, for a Grid rule to apply, there must be an "exact match" of the criteria and here there is not one. It argues that SSR 83-12 addresses the situation where a claimant's functional limitations fall "in the middle" of two categories, and directs the ALJ in this situation to consult a vocational expert. The vocational expert then assesses "the extent of any erosion of the occupational base" to determine if there are still enough jobs in a category

4

despite a claimant not being able to perform the full range of work in that category. The Government argues that this is the exact procedure the ALJ followed. This Court agrees.

The ALJ first consulted the Medical-Vocational rules in Appendix 2 to see if any rule was directly on point. He noted that *if* plaintiff could have performed the full range of light work, he would have been found "not disabled" under Grid rules 202.11 and 202.18 in the table for light work. However, he recognized that plaintiff's inability to stand or walk for six hours meant that this rule was not a specific match and that no particular outcome was thus required. In short, plaintiff's abilities were "in the middle." Accordingly, just as SSR 83-12 directs, he relied on the vocational expert who testified that plaintiff's need to sit for six hours "eroded" the light work job base, but that plaintiff could still perform *some* of these jobs. The vocational expert concluded that "many production assembly occupations are performed in a seated position and are categorized as requiring light exertion because of their pace, not due to their requirements for standing or walking." R. 20. Two such jobs are production assembler and bench assembler, with 270,000 positions in the country. The vocational expert concluded that plaintiff's inability to walk or stand for more than two hours caused a 25% erosion in the number of these jobs, but even with this 25% erosion, there were still significant numbers available. Plaintiff has not cited to any case law suggesting that this analysis is incorrect, and this Court can find no error in the analysis. In fact, after the Government filed its brief setting forth this argument, plaintiff never filed a reply brief despite having ample time to do so (*see* Dkt. #17), thus suggesting that plaintiff implicitly recognizes the Government is correct.

One final point about plaintiff's argument. His reliance on the statement in SSR 83-10 that the ability to walk is the primary difference between sedentary and light work is misleading. Here is the full statement:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs. **A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work[.]**

SSR 83-10. Plaintiff did not acknowledge the bolded sentence that follows the one he relied on. It refers to the precise issue here and supports the ALJ's conclusion.

## II. The Credibility Determination

Plaintiff next argues that the credibility analysis was flawed. An ALJ's credibility determination should be reversed only if it is "patently wrong." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). At the same time, the Seventh Circuit has stated that a credibility determination may be reversed if the ALJ "fail[s] to adequately explain his or her credibility finding by discussing specific reasons supported by the record." *Id.*; *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (a credibility finding "must be specific enough to enable the claimant and a reviewing body to understand the reasoning.").

Plaintiff argues that the ALJ failed to address *any* of the evidence regarding his headaches. However, it is plaintiff who avoids discussing the evidence. Other than a sprinkling of citations to his testimony at the hearing, plaintiff cites to the medical record only once, and it is merely a footnote containing a single page number. Dkt. #11 at 11 n.37. Plaintiff never explains what this refers to or how it helps his argument. Instead, he just hews to his conclusory and repeated claim that the ALJ failed to provide specific reasons for his decision.

This argument fails for the simple reason that plaintiff is wrong. The ALJ gave three explicit reasons. First, the ALJ observed that plaintiff testified that his symptoms at the time of the hearing were the same as they were in 2008 when he was working full-time. However, as the

6

ALJ noted, plaintiff quit that job "for reasons other than his impairments, which is not consistent with allegations of disability from all work since 2008." R. 16.

Second, after summarizing the five-year history of doctor and hospital visits (from July 2007 through August 2012), the ALJ concluded that only a few involved headache complaints and most did not. For example, in August 2012, plaintiff explicitly denied having headaches. At many other visits, plaintiff complained about many and varied symptoms but did not mention headaches. The ALJ thus reasonably concluded:

> These medical treatment records document severe and variably uncontrolled hypertension, *but no associated symptoms other than during a handful of isolated incidents*. Otherwise, they document regular denials of any symptoms such as fatigue, chest pain, headache, or shortness of breath and fail to support the claimant's allegations of needing to lie down two to three times a day and needing to sleep for two hours during the day due to headaches and/or medication side effects.

R. 18 (emphasis added). Plaintiff has not argued that this summary is inaccurate or even misleading. The ALJ is entitled to rely on this type of evidence. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005) (discussing a claim of headaches and noting that "a discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration").

Third, the ALJ noted that, at the consultative exam in July 2011, plaintiff set forth a laundry list of complaints, including a chronic cough, ankle and foot pain, chronic fatigue, hypertension, lower back pain. The ALJ found, however, that the list was at odds with the record, which contained "only one complaint of foot problems and no reports of back pain, ankle pain, or fatigue." R. 18. The ALJ also noted: "despite [plaintiff's] allegation of having daily headaches, [he] did not describe[] having headaches in the consultative exam." *Id.* The ALJ found that these two discrepancies "diminish[ed] the persuasiveness" of plaintiff's allegations.

Although plaintiff never addressed these three explicit reasons, he did complain more generally that the ALJ failed to apply the factors set forth in SSR 96-7p ("Assessing the Credibility of an Individual's Statements"). However, this argument is undeveloped and overlooks what the ALJ actually stated. Plaintiff fails to acknowledge that the ALJ, in fact, referenced 96-7p. R. 15. Moreover, although the ALJ did not explicitly analyze each 96-7p factor one by one, he still considered them in his thorough discussion of the record. For example, with regard to medications and other treatment (fourth and fifth factors), the ALJ's summary contains references to the use (or non-use) of medications as appropriate. The ALJ noted, for example, that a doctor in February 2011 wrote that plaintiff "was out of his prescribed medications, was not doing self-checks of his blood pressure, and had not been compliant with his appointments" R. 17. As for the frequency and intensity of symptoms (second factor), the ALJ's discussion contains ample references to plaintiff's waxing and waning symptoms (as discussed above). R. 16-18. As for daily activities (first factor), the ALJ summarized them, but found they were not credible for reasons already stated. In sum, as required by the Seventh Circuit, the ALJ gave "specific reasons" for, and adequately discussed, his credibility findings. *Minnick*, 775 F.3d at 937. Plaintiff has not pointed to anything that is even close to being "patently wrong" with this analysis.

## CONCLUSION

For these reasons, plaintiff's motion for summary judgment is denied, the government's motion is granted, and the decision of the ALJ is affirmed.

Date: November 23, 2015   By: _____
Iain D. Johnston
United States Magistrate Judge